UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHAMBERS OF
BRENDAN A. HURSON
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-0782
MDD_BAHChambers@mdd.uscourts.gov

June 9, 2023

LETTER TO ALL COUNSEL OF RECORD

Re:   *Barry S. c/o Mary Ann S. v. Kilolo Kijakazi, Acting Commissioner, Social Security Administration*[1]
      Civil No. 22-2421-BAH

Dear Counsel:

On September 22, 2022, Mary Ann S. filed a complaint on behalf of her deceased spouse, Barry S. ("Plaintiff"), petitioning this Court to review the Social Security Administration's ("SSA's" or "Commissioner's" or "Defendant's") final decision to deny Plaintiff's claim for Social Security benefits. ECF 1. This case was then referred to me with the parties' consent. *See* 28 U.S.C. § 636; Loc. R. 301 (D. Md. 2021). I have considered the record in this case (ECF 6), the parties' dispositive filings[2] (ECFs 9 and 11), and Plaintiff's reply (ECF 12). I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2021). This Court must uphold the decision of the SSA if it is supported by substantial evidence and if the SSA employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will DENY Plaintiff's motions and AFFIRM the Commissioner's decision. This letter explains why.

I.   **PROCEDURAL BACKGROUND**

Plaintiff filed a Title II application for Disability Insurance Benefits ("DIB") on October 26, 2012, alleging a disability onset of April 2, 2010. Tr. 151–55. The claim was denied initially and on reconsideration. Tr. 78–83, 85–91. On December 12, 2014, an Administrative Law Judge ("ALJ") held a hearing. Tr. 19–76. Following the hearing, on April 16, 2015, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act[3] during the relevant

---

[1] Defendant's brief styles the case caption as "Mary Ann S. o/b/o Barry S., deceased." ECF 11, at 1. Because the complaint styles the caption as "Barry S., decedent, c/o Mary Ann S.," ECF 1, the Court will use that caption.

[2] Standing Order 2022-04 amended the Court's procedures regarding SSA appeals to comply with the Supplemental Rules for Social Security Actions under 42 U.S.C. § 405(g), which became effective December 1, 2022. Under the Standing Order, parties now file dispositive "briefs" rather than "motions for summary judgment." Here, Plaintiff filed a motion for judgment on the pleadings and an alternative motion for remand, and Defendant filed a brief. *See* ECFS 9, 11.

[3] 42 U.S.C. §§ 301 et seq.

*Barry S. c/o Mary Ann S. v. Kijakazi*
Civil No. 22-2421-BAH
June 9, 2023
Page 2

time frame. Tr. 6–18. After the Appeals Council denied Plaintiff's request for review, Tr. 1–3, Plaintiff petitioned this Court to review the April 16, 2015, decision. Tr. 471–77. Defendant consented to remand, and this Court accordingly remanded the decision to the SSA. Tr. 478–80. After the claimant passed away on May 31, 2016, Plaintiff's spouse filed a Notice Regarding Substitution on June 9, 2016, to proceed as a substitute party. Tr. 511–12. The Appeals Council remanded Plaintiff's case to the ALJ on July 22, 2016. Tr. 481–85.

A different ALJ held a new hearing on April 27, 2017. Tr. 455–70. On September 6, 2017, the ALJ issued a decision finding that Plaintiff was not disabled. Tr. 425–41. The Appeals Council declined to review that decision. Tr. 1179–85. Plaintiff sought review of the decision in this Court, which remanded the decision to the SSA for further review on August 2, 2019. Tr. 1186–93. A third hearing was held before a third ALJ on November 23, 2020. Tr. 1132–61. That ALJ found that Plaintiff was not disabled on February 3, 2021. Tr. 1202–21. On July 15, 2021, the Appeals Council assumed jurisdiction over Plaintiff's claim and remanded the claim to the ALJ for further proceedings. Tr. 1222–28. The ALJ held another hearing on November 15, 2021, Tr. 1113–31, and issued another decision finding that Plaintiff was not disabled on February 2, 2022. Tr. 1088–1112. The Appeals Council subsequently declined to assume jurisdiction over Plaintiff's claim, Tr. 1081–87, so the February 2, 2022, decision constitutes the final, reviewable decision of the SSA. *Sims v. Apfel*, 530 U.S. 103, 106–07 (2000); *see also* 20 C.F.R. § 422.210(a).

## II. THE ALJ'S DECISION

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a). The ALJ is required to evaluate a claimant's disability determination using a five-step sequential evaluation process. *See* 20 C.F.R. § 404.1520. "Under this process, an ALJ evaluates, in sequence, whether the claimant: '(1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy.'" *Kiser v. Saul*, 821 F. App'x 211, 212 (4th Cir. 2020) (citation omitted) (quoting *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012)).

Here, at step one, the ALJ determined that Plaintiff "did not engage in substantial gainful activity during the period from his alleged onset date of April 2, 2010 through his date last insured of December 31, 2012." Tr. 1094. At step two, the ALJ found that Plaintiff suffered from the severe impairments of "plantar fasciitis, discogenic degeneration in the back, degenerative arthritis, pes planus (flatfeet), and cervical spondylosis." *Id*. The ALJ also determined that Plaintiff suffered from the non-severe impairments of "hyperlipidemia, hypertension, blepharitis, and gastroesophageal reflux disease (GERD)[.]" *Id*. At step three, the ALJ determined that Plaintiff "did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." Tr. 1095. Despite these impairments, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to:

> perform sedentary work as defined in 20 CFR 404.1567(a) except [he] [c]an stand or walk up to 2 hours of an 8 hour workday and sit for 6 hours of an 8 hour work day. Could stand or walk no more than 15-20 minutes at a time, however. Would need to stand at least a few minutes at least 2 times per hour while remaining on task. Could occasionally climb ramps or stairs, stoop, kneel, crouch or crawl. Could not climb ladders, ropes or scaffolds. Could have no more than occasional exposure to extreme cold, and vibration. Could have no exposure to hazards.

Tr. 1096. The ALJ determined that Plaintiff was able to perform past relevant work as a customer service representative (DOT[4] #249.362-026), a case worker (DOT #195.107-010), and a record manager (DOT #161.267-022). Tr. 1104–05. Therefore, the ALJ concluded that Plaintiff was not disabled. Tr. 1105.

### III. LEGAL STANDARD

As noted, the scope of my review is limited to determining whether substantial evidence supports the ALJ's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the [ALJ] . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). It is "more than a mere scintilla . . . and somewhat less than a preponderance." *Id.* In conducting the "substantial evidence" inquiry, my review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained their findings and rationale in crediting the evidence. *See, e.g.*, *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997); *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983) ("Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the [ALJ].").

### IV. ANALYSIS

On appeal, Plaintiff argues that: (1) the RFC was assessed erroneously; (2) a "sit/stand" option within the RFC constituted reversible error; (3) the ALJ erroneously evaluated medical and opinion evidence, including medical evidence from the Department of Veterans Affairs (the "VA"); (4) the ALJ did not properly evaluate Plaintiff's absenteeism; and (5) the ALJ made various errors at step four of the sequential evaluation process. ECF 9, at 11–42. Defendant counters that: (1) the ALJ "arrived at a generous" RFC which more than accommodated Plaintiff's limitations;

---

[4] The "DOT" is shorthand for the Dictionary of Occupational Titles. The Fourth Circuit has explained that "[t]he *Dictionary of Occupational Titles*, and its companion, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* . . . , are [SSA] resources that list occupations existing in the economy and explain some of the physical and mental requirements of those occupations. U.S. Dep't of Labor, *Dictionary of Occupational Titles* (4th ed. 1991); U.S. Dep't of Labor, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* (1993)." *Pearson v. Colvin*, 810 F.3d 204, 211 n.1 (4th Cir. 2015).

(2) the ALJ's sit/stand option was supported by substantial evidence; (3) the ALJ's evaluation of opinion evidence was supported by substantial evidence and comported with applicable law and regulations; (4) "greater articulation related to excessive absenteeism" was unwarranted based on the record evidence; and (5) substantial evidence supported the ALJ's step-four findings. ECF 11, at 7–25.

      A.      <u>The ALJ Properly Determined Plaintiff's RFC.</u>

The Court first considers Plaintiff's argument that the ALJ failed to perform a function-by-function assessment of Plaintiff's ability to perform work and failed to set forth a narrative discussion showing how the evidence supported each of the ALJ's conclusions in the RFC analysis. ECF 9, at 34. A claimant's RFC represents "the most [he] can still do despite [his] limitations." 20 C.F.R. § 404.1545(a)(1). In determining the RFC, an ALJ must "consider all of the claimant's 'physical and mental impairments, severe and otherwise, and determine, on a function-by-function basis, how they affect [the claimant's] ability to work.'" *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019) (quoting *Monroe v. Colvin*, 826 F.3d 176, 188 (4th Cir. 2016)). Moreover, "every conclusion reached by an ALJ when evaluating a claimant's RFC must be accompanied by 'a narrative discussion describing [ ] the evidence' that supports it." *Dowling v. Comm'r of Soc. Sec. Admin.*, 986 F.3d 377, 387 (4th Cir. 2021) (alteration in original) (citation omitted). Thus, an ALJ must both identify evidence that supports his conclusions and build an accurate and logical bridge from that evidence to his conclusions. *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018). However, the ALJ "need not parrot a single medical opinion, or even assign 'great weight' to any opinions, in determining an RFC assessment." *Jackson v. Comm'r, Soc. Sec.*, No. CCB-13- 2086, 2014 WL 1669105, at *2 (D. Md. Apr. 24, 2014).

As an initial matter, the ALJ's failure to conduct a function-by-function analysis in this case does not warrant remand. The Fourth Circuit has held that a *per se* rule requiring remand when the ALJ does not perform an explicit function-by-function analysis "is inappropriate given that remand would prove futile in cases where the ALJ does not discuss functions that are 'irrelevant or uncontested.'" *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (quoting *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013) (per curiam)). Remand is only required "where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." *Id*. (quoting *Cichocki*, 729 F.3d at 177). As such, the lack of an explicit function-by-function analysis does not warrant remand here.

Moreover, a careful review of the ALJ's decision makes clear that the ALJ amply supported the RFC determination with substantial evidence. The ALJ engaged in a narrative discussion of Plaintiff's medical evidence spanning almost eight pages and citing to specific evidence in the record. Tr. 1096–1104. The ALJ also logically explained how this evidence, along with Plaintiff's testimony, Plaintiff's spouse's testimony, and the opinions of medical professionals, leads to the conclusion that Plaintiff can perform sedentary work with certain physical limitations.[5] *Id.*

---

[5] Plaintiff avers that the ALJ erred by determining that Plaintiff could return "to past relevant work

*Barry S. c/o Mary Ann S. v. Kijakazi*
Civil No. 22-2421-BAH
June 9, 2023
Page 5

Despite this lengthy narrative discussion, Plaintiff contends that the "ALJ erred by failing to consider or even meaningfully acknowledge in her decision the substantial medical, non-medical[,] and vocational evidence in the record . . . ." ECF 9, at 40. But even a cursory review of the ALJ's decision belies that contention and, in any event, Plaintiff does not identify any specific evidence that the ALJ failed to consider.[6] The failure to do is fatal to Plaintiff's argument. *See Hancock*, 667 F.3d at 472 ("The claimant has the burden of production and proof in Steps 1–4.").

In addition to the overarching argument regarding the sufficiency of the RFC overall, Plaintiff alleges error with respect to more specific aspects of the RFC. First, Plaintiff avers that the ALJ erroneously omitted a discussion of Plaintiff's limitations in concentrating, persisting, and maintaining pace. ECF 9, at 35. But the ALJ was not required to provide this discussion, which is only necessary when (unlike in this case) a claimant is determined to possess a mental impairment. *See* 20 C.F.R. § 404.1520a. Plaintiff also argues that the ALJ erred by failing to determine a percentage of time off-task. ECF 9, at 34. This argument appears to conflate the vocational expert's testimony with the ALJ's decision. At the hearing, the vocational expert testified that being off-task for more than 15 percent of a workday would be work-preclusive. Tr. 1129. But Plaintiff's argument is unavailing because the ALJ's decision did not adopt this finding. Indeed, the ALJ was not required to make a finding regarding time off-task. *See, e.g.*, *Kane v. Comm'r, Soc. Sec. Admin.*, No. SAG-17-1252, 2018 WL 2739961, at *2 n.2 (D. Md. May 14, 2018) ("[A]n ALJ is not required to determine a percentage of time off-task, and can simply consider whether a claimant has the ability to sustain work over an eight-hour workday."). Accordingly, the ALJ's failure to determine an off-task percentage does not warrant remand.

Plaintiff also takes issue with the RFC limitation limiting Plaintiff to: (1) standing or walking up to two hours and sitting up to six hours; (2) standing or walking no more than 15–20 minutes at a time; and (3) standing at least a few minutes at least two times per hour while remaining on task. ECF 9, at 18–22. While Plaintiff does not appear to argue that a "sit/stand" option was unwarranted *generally*, he contends that pursuant to Social Security Ruling ("SSR") 83-12 and SSR 96-9p, the "sit/stand" RFC limitation adopted in this case constituted error because:

---

at a high skill or semi-skill level" and contends that Plaintiff should instead have been restricted to a "limited range of unskilled sedentary work at best." ECF 9, at 41. But Plaintiff provides no explanation for why this result is warranted. As such, I am unable to evaluate the merits of this argument. *See Hancock*, 667 F.3d at 472 ("The claimant has the burden of production and proof in Steps 1–4.").

[6] Plaintiff points to evidence in the record that, in Plaintiff's estimation, demonstrates "uncontroverted findings" as to Plaintiff's "severe pain, stiffness, limited range of motion, and difficulties with prolonged sitting, standing or walking, etc." ECF 9, at 24. But the ALJ considered this evidence and cited the medical records repeatedly in the decision. Tr. 1096–1104. I am not permitted to reweigh this evidence. *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) ("Ultimately, it is the duty of the administrative law judge reviewing a case, and not the responsibility of the courts, to make findings of fact and to resolve conflicts in the evidence.").

(1) the phrase "at least" is so ambiguous as to "interfere with the ability to consistently perform and attend to work tasks"; and (2) the requirement that Plaintiff must remain on task while alternating between standing and sitting could erode the occupational base and is unsupported by substantial evidence. *Id.*

I disagree. To be sure, SSR 96-9p explains that "[t]he RFC assessment must be specific as to the frequency of the individual's need to alternate sitting and standing." SSR 96-9p, 1996 WL 374185, at *7 (S.S.A. July 2, 1996). But SSR 96-9p is "not applicable" to cases, like this one, which terminate at step four of the sequential evaluation process, because its purpose is "[t]o explain the Social Security Administration's policies regarding the impact of [an RFC] assessment for less than a full range of sedentary work on an individual's ability *to do other work*." *Thompson v. Astrue*, 442 F. App'x 804, 806 (4th Cir. 2011) (citing SSR 96-9p, 1996 WL 374185, at *1) (emphasis in *Thompson*). SSR 83-12, on the other hand, does not address the specificity required of an RFC sit/stand option. *See* SSR 83-12, 1983 WL 31253, at *4 (S.S.A. Jan. 1, 1983). Rather, it provides that "[i]n cases of unusual limitation of ability to sit or stand, a [vocational expert] should be consulted to clarify the implications for the occupational base." *Id.* Here, the ALJ solicited this clarification from the vocational expert. *See* Tr. 1127–29 (posing a hypothetical to the vocational expert that includes a limitation that the hypothetical individual "would need to stand up for a few minutes twice during the hour, at least twice during the hour while remaining on task").

Moreover, courts have recognized that an RFC sit/stand option which fails to state how frequently the claimant needs to alternate between sitting and standing is permissible. *See, e.g.*, *Williams v. Barnhart*, 140 F. App'x 932, 937 (11th Cir. 2005) ("Although the ALJ failed to specify the frequency that [the claimant] needed to change his sit/stand position, the reasonable implication of the ALJ's description was that the sit/stand option would be at [the claimant's] own volition. This implication satisfies [the claimant's] needs."); *Young v. U.S. Comm'r of Soc. Sec.*, No. 8-474, 2009 WL 2827945, at *12 (W.D. La. Sept. 1, 2009) (finding harmless error where the ALJ "failed to specify the frequency of [the claimant's] sit/stand option," because "it is assumed that the 'sit/stand option' given by the ALJ was implicitly 'as needed' or 'at will'").

Additionally, the RFC's requirement that Plaintiff must remain on task while switching positions does not constitute error. *See, e.g.*, *Ellis v. Comm'r of Soc. Sec.*, No. 20-74, 2022 WL 1127114, at *3 (E.D.N.C. Jan. 31, 2022) ("It is not legal error for an ALJ to "dr[a]w her own conclusions from the evidence regarding Plaintiff's ability to maintain a position and remain on task.") (brackets in original), *report and recommendation adopted sub nom*. *Ellis v. Kijakazi*, 2022 WL 990373 (E.D.N.C. Mar. 31, 2022); *Sandra D. v. Comm'r of Soc. Sec. Admin.*, No. 20-1067, 2022 WL 344058, at *6 (N.D.N.Y. Feb. 4, 2022) (determining that the ALJ was entitled to find that the claimant could remain on task "during . . . a position switch" because the record "conspicuously lack[ed] any mention of the necessity of greater limitation"). Here, Plaintiff points to no specific evidence evincing his need to go off-task before changing positions. As such, I do not find remand to be warranted based on the RFC's sit/stand option.

*Barry S. c/o Mary Ann S. v. Kijakazi*
Civil No. 22-2421-BAH
June 9, 2023
Page 7

B.  The ALJ Properly Evaluated Medical and Opinion Evidence.

Plaintiff next argues that the ALJ failed to properly evaluate medical and opinion evidence in accordance with 20 C.F.R. § 404.1529, SSR 16-3p, and the Fourth Circuit's holding in *Arakas v. Comm'r, Soc. Sec. Admin.*, 983 F.3d 83, 108 (4th Cir. 2020).[7] ECF 9, at 22–23. Specifically, Plaintiff avers that the ALJ erroneously found that his "severe impairments were . . . not found or supported by objective medical evidence and findings, and/or that the impairments were not as severe as alleged due to purported conservative treatment and/or improvement from the same." *Id*. at 23.

"In determining a claimant's RFC, the ALJ must evaluate the claimant's subjective symptoms using a two-part test." *Larry W. v. Kijakazi*, No. TJS-21-693, 2022 WL 986107, at * 3 (D. Md. Apr. 1, 2022) (citing *Lewis v. Berryhill*, 858 F.3d 858, 866 (4th Cir. 2017); 20 C.F.R. § 404.1529(a)). First, the ALJ must determine whether objective evidence shows the existence of a medical impairment that could reasonably be expected to produce the alleged symptoms. *Id*. (citing 20 C.F.R. § 404.1529(b)). Once the claimant makes that threshold showing, the ALJ must evaluate the extent to which the symptoms limit the claimant's capacity to work. *Id*. (citing 20 C.F.R. § 404.1529(c)). At this second stage, the ALJ must consider all available evidence, including medical history, objective medical evidence, and statements by the claimant. *Id*. To evaluate a claimant's statements, an ALJ must "consider all of the evidence in an individual's record when they evaluate the intensity and persistence of symptoms after they find that the individual has a medically determinable impairment(s) that could reasonably be expected to produce those symptoms." *Id*. (quoting SSR 16-3p, 2016 WL 1119029, at *2 (Mar. 16, 2016)).

The Fourth Circuit has "consistently held that 'while there must be objective medical evidence of some condition that could reasonably produce the pain, there need not be objective evidence of the pain itself or its intensity.'" *Arakas*, 983 F.3d at 95 (quoting *Walker v. Bowen*, 889 F.2d 47, 49 (4th Cir. 1989)). "Rather, a claimant is 'entitled to rely exclusively on subjective evidence to prove the second part of the test.'" *Id*. (quoting *Hines v. Barnhart*, 453 F.3d 559, 565 (4th Cir. 2006)). In *Arakas*, the Fourth Circuit found that the ALJ properly concluded that the claimant's "medically determinable impairments 'could reasonably be expected to cause some of the alleged symptoms,' thus satisfying the first step of the symptom-evaluation framework." *Id*. at 96. "But at the second step, the ALJ improperly discredited [the claimant's] statements about the severity, persistence, and limited effects of her symptoms because [the ALJ] did not find them to be 'completely consistent with the objective evidence.'" *Id*. (internal citations omitted). "Because [the claimant] was 'entitled to rely exclusively on subjective evidence to prove' that her symptoms were 'so continuous and/or so severe that [they] prevent[ed] [her] from working a full eight hour day,' the ALJ 'applied an incorrect legal standard' in discrediting her complaints based

---

[7] Plaintiff also appears to argue that the ALJ erred by giving "no clear weight" to medical opinions other than VA opinions, in violation of 20 C.F.R. § 404.1527(d). ECF 9, at 22, 34. But Plaintiff does not identify which opinions were not weighed and, in any event, the ALJ's decision contradicts this argument. *See* Tr. 1102 ("I give no weight to the December 2014 letter from the claimant's treating internist").

*Barry S. c/o Mary Ann S. v. Kijakazi*
Civil No. 22-2421-BAH
June 9, 2023
Page 8

on the lack of objective evidence corroborating them." *Id*. (alterations in original) (internal citations omitted). The Fourth Circuit concluded that the ALJ "'improperly increased [the claimant's] burden of proof' by effectively requiring her subjective descriptions of her symptoms to be supported by objective medical evidence." *Id*. (quoting *Lewis*, 858 F.3d at 866).

  Here, a careful review of the ALJ's decision reveals that the ALJ properly assessed Plaintiff's subjective complaints. The ALJ first determined that Plaintiff's "plantar fasciitis, discogenic degeneration in the back, degenerative arthritis, pes planus (flatfeet), and cervical spondylosis" were severe. Tr. 1094. The ALJ then proceeded to evaluate Plaintiff's symptoms and the extent to which they limit his capacity to work. But, contrary to Plaintiff's assertions, this process comported with 20 C.F.R. § 404.1529 and the requirements delineated in *Arakas*, as the ALJ did not require Plaintiff to produce "objective evidence" to corroborate subjective complaints of pain. *Arakas*, 983 F.3d at 96. Specifically, the ALJ took note of Plaintiff's testimony from January of 2013 which catalogued his significant difficulties with lifting, squatting, bending, reaching, walking, sitting, kneeling, climbing, and holding onto items. Tr. 1096. The ALJ also considered Plaintiff's testimony from December of 2014, in which he noted that "pain in his neck, back, and feet prevented him from working." *Id.*

  The ALJ then determined that although Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," his "statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]" Tr. 1097–98. To support this determination, the ALJ noted that certain physical findings belied the allegedly limiting effects of Plaintiff's symptoms. For example, the ALJ noted that just prior to the onset of his alleged disability, Plaintiff "had a normal physical examination including intact sensory, intact deep tendon reflexes and full (5/5) motor strength in all muscle groups." Tr. 1098. Notably, the ALJ observed that even disability examinations conducted by the VA—which had determined that Plaintiff was "100% disabled"—did not "support the limitations alleged." Tr. 1099, 1102. The ALJ specifically noted that VA disability examinations showed, among other things, "no interference with sitting, standing, and/or weight bearing," "no degenerative or traumatic arthritis," "normal gait," "normal strength throughout the bilateral low extremities, including hip and ankle and no atrophy noted," and "no weakened movement." Tr. 1099–1100.

  A careful reading of this analysis reveals that the ALJ merely weighed Plaintiff's subjective complaints against other record evidence.[8] This remains permissible under *Arakas*. *See John O. v. Kijakazi*, No. AAQ-21-1378, 2022 WL 2305255, at *5 (D. Md. June 27, 2022) (distinguishing *Arakas* and affirming the ALJ's decision where the ALJ discounted the plaintiff's subjective complaints based on objective medical evidence—rather than a *lack* of objective evidence as was impermissible in *Arakas*). Indeed, the ALJ noted that inconsistency within Plaintiff's *own statements* undermined the limiting effects of his symptoms. For instance, the ALJ noted Plaintiff

---

[8] Moreover, the ALJ's comprehensive account of the objective evidence, accompanied by relevant record citations, belies Plaintiff's contention that the ALJ "play[ed] doctor" and "cherry pick[ed]" evidence. ECF 9, at 28.

denied having "any pain" during medical visits in 2010, 2011, and 2012. Tr. 1098–99. Such an observation belies Plaintiff's contention that the ALJ "failed to explain at all" how his statements undercut his credibility. ECF 9, at 24.

Moreover, *Arakas* holds that "ALJs may not rely on objective medical evidence (or the lack thereof) . . . to discount a claimant's subjective complaints regarding symptoms of . . . some disease *that does not produce such evidence*." *Arakas*, 983 F.3d at 97 (emphasis added). But Plaintiff does not suggest that his subjective complaints relate to a disease that fails to present objective evidence of its existence. Further, Plaintiff's reliance on SSR 16-3p is misplaced. ECF 9, at 22. This ruling makes clear that "[a] report of . . . inconsistencies in the objective medical evidence is one of the many factors [that the SSA] must consider in evaluating the intensity, persistence, and limiting effects of an individual's symptoms." SSR 16-3p, 2017 WL 5180304, at *5 (Oct. 25, 2017). As such, the ALJ did not err in weighing Plaintiff's subjective complaints against the objective evidence in this case.[9]

The ALJ also appropriately considered the VA's determination that Plaintiff was 100 percent disabled as of February 7, 2012. Tr. 1102–04. On remand, the Appeals Council directed the ALJ to provide "further consideration of the VA rating determinations" at issue in this case. Tr. 1225. Accordingly, the ALJ found that the VA's determination was not entitled to substantial weight. Tr. 1102 (citing *Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d 337 (4th Cir. 2012) (holding that "the SSA must give substantial weight to a VA disability rating [unless] the record before the ALJ clearly demonstrates that . . . a deviation is appropriate")).[10] Among other things, the ALJ noted that: (1) imaging results from a VA source contradicted Plaintiff's complaints of back and neck pain; (2) a VA physician noted Plaintiff's feet not to have arthritis; (3) imaging results from VA treatment showed no "marked deformity in the feet"; and (4) Plaintiff's daily activities and conservative treatment history contradicted the VA's findings. Tr. 1102–04. Thus, I find that substantial evidence supported the ALJ's determination on this issue.

      C.      <u>The ALJ Did Not Err by Failing to Evaluate Plaintiff's Absenteeism.</u>

Plaintiff argues that the ALJ failed to consider evidence that his "well-documented and supported impairments" led to "excessive absenteeism" in his previous work and affect his ability

---

[9] Plaintiff also takes issue with the ALJ's characterization of his pain treatment as "conservative." ECF 9, at 26. But the Fourth Circuit "has long held that it is appropriate for the ALJ to consider," as the ALJ did here, "the conservative nature of a [claimant's] treatment—among other factors—in judging the credibility of the [claimant]." *Dunn v. Colvin*, 607 F. App'x 264, 273 (4th Cir. 2015).

[10] The Court notes that "in claims filed . . . on or after March 27, 2017," the SSA "will not provide any analysis . . . about a decision made by any other governmental agency . . . about whether" a claimant is disabled. 20 C.F.R. § 404.1504. Plaintiff's claim was filed well before 2017, *see* Tr. 151, rendering this regulation inapplicable. *See Rogers v. Kijakazi*, 62 F.4th 872, 877 n.3 (4th Cir. 2023) (recognizing that 20 C.F.R. § 404.1504 "undisputedly d[oes] not apply" to claims filed before March 27, 2017).

*Barry S. c/o Mary Ann S. v. Kijakazi*
Civil No. 22-2421-BAH
June 9, 2023
Page 10

to "sustain gainful employment of any kind." ECF 9, at 12. I disagree. While Plaintiff's spouse testified that Plaintiff "was fired from his last job because of . . . time he missed due to his illness," Tr. 1097, a "Separation Notice" issued by the VA on December 28, 2009, notes that Plaintiff was terminated for failure to follow proper leave request procedures and for failure to provide documentation to support his extended absences. Tr. 1378–79. Plaintiff contends that the language of the separation notice was improperly interpreted by the ALJ, who should have instead relied upon the "uncontroverted" testimony of Plaintiff and his spouse. ECF 9, at 12–13. However, the record *does* controvert this testimony and the ALJ is explicitly tasked with weighing the evidence. As Defendant correctly notes, Plaintiff testified in 2014 that he was fired for having "walking pneumonia"—an impairment that is not at issue in this case—despite no mention of walking pneumonia appearing in the VA's separation notice. ECF 11, at 8 (citing Tr. 29); *see also* Tr. 1094–95 (listing Plaintiff's severe and non-severe impairments). As such, it was not error for the ALJ to find that Plaintiff's testimony failed to shed light on any connection between Plaintiff's impairments and his absences from work. Further, even if the Court disagreed with the ALJ's interpretation of the separation notice, it is not the Court's role to "reweigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the ALJ,'" who apparently found that a separation notice, rather than hearing testimony, was most probative of the reasons behind Plaintiff's termination. *Shinaberry v. Saul*, 952 F.3d 113, 123 (4th Cir. 2020) (quoting *Hancock*, 667 F.3d at 472).

Plaintiff further avers that a December 21, 2009, letter from the VA, which requests documentation to support his absences, "unequivocally confirms that these absences pertained" to his severe impairments and the pain resulting therefrom. ECF 9, at 15 (citing Tr. 1381). But this letter does not mention any of Plaintiff's impairments, *see* Tr. 1381, making it unclear how the letter establishes a causal link between Plaintiff's impairments and his absenteeism. Further, as discussed above, the VA appears to have terminated Plaintiff for failure to provide documentation supporting his absences. Tr. 1378–79. Instead of explaining why this documentation was not produced, Plaintiff suggests that "it is more than reasonable to assume that [Plaintiff] was required to go to the doctor on at least a few occasions due to these severe impairments." ECF 9, at 17. While this assumption may not be unreasonable, the ALJ was not required to make it. *See Prudich v. Saul*, No. 20-19, 2021 WL 933864, at *3 (S.D.W. Va. Mar. 11, 2021) ("ALJs are not required to assume facts for which there is no evidence . . . .").

Certainly, Plaintiff disagrees with how the ALJ considered, or failed to consider, the evidence related to his absenteeism. But this Court "does not reweigh evidence . . . in evaluating whether a decision is supported by substantial evidence; '[w]here conflicting evidence allows reasonable minds to differ,' we defer to the Commissioner's decision." *Fiske v. Astrue*, 476 F. App'x 526, 527 (4th Cir. 2012) (quoting *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam)). Accordingly, I find that remand is not warranted based upon this issue.

        D.        <u>The ALJ Did Not Err at Step Four.</u>

Plaintiff also argues that the ALJ erred at step four by "failing to consider and accept" the vocational expert's answers to several hypothetical questions during the hearing. ECF 9, at 39–40. Because a careful review of the hearing transcript and the ALJ's decision belies Plaintiff's

argument, I disagree. As Plaintiff acknowledges, the ALJ posed an initial hypothetical question to the vocational expert which "matched" the limitations of the RFC as described in the ALJ's decision. *See id.* at 39; *see also* Tr. 1096, 1127–28. After the vocational expert confirmed that Plaintiff could perform past relevant work based on this hypothetical, Tr. 1128, the ALJ asked "if the individual from hypothetical one" could still perform Plainitff's past relevant work if the individual were "further limited in that this individual can sit four hours of an eight hour work day." Tr. 1129. The vocational expert responded that this sitting limitation would be work-preclusive. *Id.* Here, no error occurred because the work-preclusive sitting limitation from the second hypothetical was not ultimately adopted into the RFC. *See* Tr. 1096 (finding that Plaintiff can sit for six hours during a workday, which corresponds to the ALJ's initial hypothetical question). Plaintiff contends that this initial question constituted error because it contained limitations and an RFC which were unsupported by substantial evidence. ECF 9, at 40. The heart of Plaintiff's argument is that the ALJ failed to adopt an RFC that matched one of the more restrictive hypotheticals. Because I find that the RFC in the ALJ's decision was supported by substantial evidence for the reasons above, this argument is unpersuasive.

Plaintiff alleges further error in that the ALJ did not consider or accept the answers to two of her attorney's hypothetical questions, which concerned a time off-task percentage and absenteeism. ECF 9, at 39, *see* Tr. 1129–30. However, "an ALJ is free to accept or reject restrictions included in hypothetical questions suggested by a claimant's counsel, even though these considerations are more restrictive than those suggested by the ALJ." *France v. Apfel*, 87 F. Supp. 2d 484, 490 (D. Md. 2000) (citing *Martinez v. Heckler*, 807 F.2d 771, 774 (9th Cir. 1986)). As discussed above, the ALJ was not required to determine a percentage of time off-task and did not err by failing to address Plaintiff's absenteeism. Accordingly, I find that the ALJ did not err by failing to address these hypothetical questions.

Plaintiff further contends that the ALJ erred at step four because the job of "Customer Service Representative" (which the ALJ determined Plaintiff could perform at step four) is actually listed as an "Order Clerk" in the DOT. ECF 9, at 40. Plaintiff fails to explain why this incongruity in the name, absent anything more, constitutes error. Accordingly, I find the argument unavailing. Plaintiff also contends that the job of "Human Personnel Manager" is not listed in the DOT, *id.*, but this argument fails as the ALJ did not list this job as past relevant work at step four. *See* Tr. 1104–05. Lastly, Plaintiff suggests that the job of record manager, pursuant to the DOT, "would inevitably require much longer periods of sitting" without the possibility of freely standing or walking multiple times per hour. ECF 9, at 40. But, even if this were correct, the vocational expert made clear that their testimony regarding this job was not based solely upon the DOT, but also upon their own experience and training. Tr. 1130 (clarifying that the vocational expert's testimony regarding "sit/stand options" was not based on the DOT); *see* SSR 00-4p, 2000 WL 1898704, at *2 (S.S.A. Dec. 4, 2000) (recognizing that a VE can use their own experience to resolve conflicts with the DOT or provide vocational testimony outside the scope of the DOT). As such, I find these additional allegations of error at step four to be unpersuasive.

V.    **CONCLUSION**

For the reasons set forth herein, Plaintiff's motion for judgment on the pleadings, ECF 9,

*Barry S. c/o Mary Ann S. v. Kijakazi*
Civil No. 22-2421-BAH
June 9, 2023
Page 12

is DENIED, and Plaintiff's alternative motion for remand, ECF 9, is DENIED. Pursuant to sentence four of 42 U.S.C. § 405(g), the SSA's judgment is AFFIRMED. The clerk is directed to CLOSE this case.

  Despite the informal nature of this letter, it should be flagged as a Memorandum Opinion. A separate implementing Order follows.

          Sincerely,

          /s/

          Brendan A. Hurson
          United States Magistrate Judge